Littleton, Judge,
delivered the opinion of the court :
The contract involved in this suit was entered into June 19, 1930, and under it plaintiff agreed to furnish all labor and materials and to perform all work required for the extension and remodeling of the building, exclusive of the work specified as not included, at the post office and courthouse at Brooklyn, New York, for a consideration of $2,050,000, in accordance with designated specifications, schedules, and drawings. The specifications upon which plaintiff submitted its bid and the contract subsequently entered into by the parties provided that the work called for by the specifications and drawings was to be completed and delivered within Y20 calendar days after date of receipt of notice to proceed. Notification was received by plaintiff June 28, 1930, fixing June 1Y, 1932, as the date for completion of the work, as originally specified.
Articles^ 3 and 5 of the standard form of government contract provided for and authorized the defendant to make changes and to order extra work, and also provided that if .such changes or extra work caused an increase or decrease in the amount due under the contract, or in the time required for its performance, an equitable adjustment should be made.
Plaintiff bases its claim for damages for delay alleged to ■have been caused by the defendant upon the contentions (1) that defendant caused a delay of 244 days in the completion of the original work called for by the contract due to the unusually large number of changes- required and the manner in which they were directed to be made; (2) that these changes, and the job conditions resulting therefrom, increased overhead expenses and subjected plaintiff to many other costs and expenses which, otherwise, it would not have incurred; and (3) that for such overhead expenses and losses the defendant is liable under the contract as for a breach thereof. ^
The proof submitted does not establish that the defendant breached any provision of the contract by unreasonably interfering with or delaying the proper prosecution and perform- *689 anee, of the original contract work, including the changes ordered; nor does the proof establish that any of the changes ordered were- unreasonable as not being within the contemplation of the contract, or that the defendant, in the circumstances, unreasonably delayed the proper prosecution of the alleged contract work in making a decision with reference to any of the changes considered or ordered by it.
A total of 62 changes was made by defendant during performance of the contract, 56 of which involved additional work and resulted in an increase in the contract price in the total amount of $107,975.98. The remaining six changes decreased certain of the work originally called for and resulted in deductions from the contract price aggregating $27,295.75. The net increase in the contract price totaled $80,680.23, approximately $15,000 of which was profit realized by plaintiff. Each one of the changes made was the result of an agreement between the parties as to the exact amount to be paid therefor by the defendant or the amount to be deducted from the contract price for such work as was eliminated. Approximately 90 percent of all the structural and finishing work called for by the contract was performed by more than twenty independent subcontractors of the plaintiff in the various trades. The subcontractors furnished all labor and technical supervision. In connection with all changes or extras, the government sent the plaintiff drawings or specifications with reference thereto, and requested plaintiff to submit its proposals or bids therefor. The plaintiff, in turn, delivered the government’s drawings or specifications to one or more of its subcontractors concerned with the particular work to which the changes or extras related and it obtained from the subcontractor in each case a bid to furnish all materials, labor, supervision, tools and equipment necessary in connection with the proposed change for extra work. The plaintiff, upon receiving the subcontractors’ bids, added 10 percent for overhead and 10 percent- of this total for profit in each case and submitted the total of the combined- figures to the contracting officer as its proposal or bid for performing the change or additional work. These changes, as the contract contemplated would be the case, were considered and decided upon during performance by *690 plaintiff, or of its subcontractors, of the work originally called for by the contract, and, of necessity, some time was required in connection with the negotiations with plaintiff therefor as to the amounts to be paid as an increase to the contract price. Some stoppage and interruption of continuity of the original contract work unavoidably resulted, but the defendant cannot be held liable in damages for delay in completion of the original work called for by the contract due to changes authorized therein, unless it abused its privilege to make changes or otherwise unreasonably delayed the proper prosecution of the work in such a way and under such circumstances as to constitute a breach of some express or implied provision of the contract.
The evidence submitted in this case shows that the defendant did not breach its contract, and the evidence further shows that the changes considered and ordered by the defendant were reasonable. The evidence also establishes the fact that the defendant acted with reasonable promptness in the circumstances in considering and making decisions on the changes, or extras involved. The time which was necessary for the contracting officer’s office to take in considering, estimating, and deciding upon the changes and bids therefor was due to the amount and pressure of work in the office of the Supervising Architect. In connection with the change involving the penthouse and proposed cafeteria on a portion of the seventh floor of the new addition to the post office, of which plaintiff seriously complains (finding 13), plaintiff’s principal agent and supervising superintendent of construction, Langhorne, testified as follows:
There was a great deal of detailed estimating in connection with the proposed change, involving about $117,000.00. * * * .
They submitted teria ; we figured it up, and it amounted to one hundred and seventeen thousand and-some dollars. There was a great deal of detailed estimating. There was kitchen equipment, electrical work, steel, masonry, concrete, and all that sort of stuff. The Supervising Architect’s Office was literally swamped. They simply could not get their estimator to do the work in time^ .Mr. O’Brien [defendant’s construction engineer] called that to my atten *691 tion, and I suggested that it would be of great assistance if we sent our estimator to Washington to sit down with their estimator and say, “Here is how we arrived at our figures,” and in that way save, time. We sent our man down personally to facilitate action on this.
$ ‡
Q. Was action facilitated?
A. You might say that it was. The action was simply this, that they stated that they did not have the money to build it [the cafeteria].
Q. Did you discuss with Mr. O’Brien the question referred to in Exhibit No. 22 ? [Finding 13.]'
A. Do you mean did I discuss this specific letter with him before it was mailed?
Q. The general subjects mentioned in it.
A. Yes. The general subjects mentioned in this letter were the occasion for the delays. The question of changes was almost a constant subject of discussion between the representatives of the Magoba Construction Company and the representatives of the Government.
The Government had on this work one of the most capable construction engineers I have ever seen since I have been in the business, and he was doing everything he possibly could to facilitate the work in every way. He knew, months ahead of time, that there was going to be a delay, and I took up with him the question of delay, particularly as to the application for an extension of the contract time within the prescribed 10 days after the delay occurred. He suggested this: “Unquestionably there is going to be, it is conceded, a considerable period of delay, and I suggest that you write the Department one letter, enumerating therein each specific case which involves a delay. I will make my recommendations on that, and the Government will reply thereto.”
The contracting officer was liberal in the extensions of time granted plaintiff for completion of the work. Most of the delay in completion of the original contract work of which plaintiff complains, and for which the defendant was in nowise responsible, is shown from a study of the evidence to have been due to plaintiff’s financial instability and lack of experience, skill, and professional ability to handle and perform successfully work of the magnitude involved under the contract in suit; the lack of proper preliminary planning, the synchronization and coordination by plaintiff of *692 the different parts of the work among the various subcontractors, and between them and the plaintiffs; the delays brought about by the duplication and overlapping of effort, and lack of diligence in proceeding with certain of the work in the early stages thereof; and the general confusion and loss of time resulting from such improper planning, coordination, and cooperation.
Plaintiff has failed to prove that any provision of the contract was breached by the defendant and has failed to prove any damage that can be fairly attributed to any act of the defendant, or its omission to act, contrary to any provision of the contract between the parties.
Plaintiff is therefore not entitled to recover and its petition is dismissed. It is so ordered.
Madden, -Judge-, Whitaker, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.