**MIRACLE CONTRACTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 49–82C.

United States Claims Court.

July 5, 1984.

John G. Roberts, Bethesda, Md., attorney of record for plaintiff.

Richard I. McKay, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., attorney of record for defendant.

TIDWELL, Judge:

This is a government contract case which involves 13 janitorial contracts and two parking contracts awarded by the General Services Administration (GSA) to Miracle Contractors, Inc. Plaintiff seeks $375,000 in damages alleging breach of contract in that defendant wrongfully withheld payment due plaintiff under the contract and suspended plaintiff from further government contracting until after January 1, 1984. Defendant counterclaimed seeking $374,644 in damages under the False Claim Act, 31 U.S.C. 231 *et seq.*, alleging that plaintiff misrepresented the number of man-hours actually worked by plaintiff's employees under the janitorial contracts and that plaintiff submitted false vouchers to the government under the contracts. Defendant also counterclaimed for $13,237 which plaintiff allegedly owes defendant pursuant to the parking contracts.

Defendant, seeking dismissal of plaintiff's Complaint, moved for summary judgment on the grounds that there is no genu-ine issue of material fact and that plaintiff failed to state a claim upon which relief can be granted and that defendant is entitled to judgment as a matter of law.

## FACTS

GSA awarded to plaintiff 18 fixed-price janitorial contracts running from March 1976 through January 1981 for the upkeep of buildings in the Washington Metropolitan area. Thirteen of the contracts contained a minimum man-hour clause which constitute the basis of this lawsuit. The clause provided that if a specified number of man-hours were not performed daily by plaintiff's employees, then defendant could make deductions from the payment due plaintiff under the contract. The contracts further required plaintiff to keep a daily record of each employee who worked at each site, including the employee's classification and the number of hours worked. Each employee was required to sign in and sign out of the buildings on GSA Form 139 (record of time of arrival and departure from building). At the end of each two-week period, plaintiff was to furnish a certified copy of the record to the contracting officer.

In November of 1978 the GSA Contract Assurance Task Force examined plaintiff's performance on Contract No. 03CB091601 (the NASSIF Building), one of the minimum man-hour janitorial contracts. The task force found that plaintiff's employees were not working the minimum number of hours required under the contract despite plaintiff's reports to the contrary.[1] Subsequently, on January 31, 1979, the Regional Administrator requested that the Director of the Office of Investigations investigate plaintiff regarding the problems uncovered by the task force. Part of the investigation consisted of taking a deposition of James Mastropoalo, President of plaintiff. In the deposition, taken on March 21, 1979, Mr. Mastropoalo admitted falsifying man-hours on GSA Form 139. He stated:

> It always seemed to come to the point at the end of the month that I was shy

---

1. However, during this time period the NASSIF building was clean and passed inspection.

man-hours.... I have seven-hour people and they sign in for eight.... I feel what I'm doing is I'm fraudulently filling out a Federal document....

Plaintiff, however, alleges that GSA administration officials assured Mr. Mastropoalo all along that the government's interest in plaintiff's performance was only that the buildings be properly cleaned. Plaintiff claims that it was repeatedly lead to believe by responsible GSA officials, contracting officers, contract administrators, and inspectors that payment deductions for not meeting the minimum man-hour requirement would occur only in the event that the cleaning performed proved unsatisfactory or untimely.

In February of 1980, the GSA Washington Field Audit Office audited plaintiff's business records. It determined that plaintiff had operated, prior to May of 1978, without a system which would record employee hours on payroll registers. Therefore, any calculations of number of hours worked based on payroll registers was not possible prior to May of 1978. After May of 1978, plaintiff's payroll records recorded employee hours by individual building. Since each building could be tied to one of the 13 minimum man-hour contracts, the auditors were able to compare the number of hours worked for payroll purposes with the minimum hour requirements specified in the corresponding contracts. Using this approach, the auditors determined that plaintiff had failed to meet the minimum man-hour requirements levels by 13,397 hours resulting in an overpayment to plaintiff of $106,651.

On November 21, 1980, in response to the auditor's report, the Director of the GSA Regional Contracts Division stopped payment of all subsequent invoices submitted by plaintiff on the janitorial contracts. Plaintiff alleges that defendant withheld $47,776. However, defendant asserts that the amount withheld was only $35,132.

On June 29, 1981, GSA Washington Field Audit Office issued the results of a second audit it had conducted on plaintiff's records which covered the period of time from May 4, 1979 to January 21, 1981. This audit showed that plaintiff had underrated the minimum man-hour contracts by 9,168.30 hours resulting in an overcharge to defendant of $780,681. Plaintiff was subsequently suspended from doing business with GSA by the Commissioner of Public Buildings Service on January 19, 1981. Plaintiff appealed the suspension on February 5, 1981 to the GSA Board of Contract Appeals (BCA). The GSABCA upheld the suspension on June 18, 1981 after concluding that the audits and Mr. Mastropoalo's deposition constituted a reasonable basis for the Commissioner's determination.

Plaintiff also had entered into several parking service contracts with GSA. Two of the contracts, GSA No. GS–11C–00104 (Forrestal Building) and 11C–00102 (Half Street Building), required plaintiff to collect parking permit fees and remit the fees to GSA. Specifically, plaintiff was to deposit in a bank at the close of business each day all currency and coin collected under the contracts which were then to be converted into a cashier's check payable to GSA. All checks collected were to be hand carried to GSA by 3:00 p.m. on the day following receipt.

On December 1, 1980, Ms. Peggy Brown, then President of Miracle Contractors,[2] failed to deposit the parking receipts for the day in a bank as required by the two contracts. Instead, she carried them home with her after the close of business. When Ms. Brown parked her car in a parking lot near her residence early in the evening, she was allegedly robbed.[3] Plaintiff contends that, as a result of the alleged robbery, it

---

2. Ms. Peggy Brown replaced James Mastropoalo as President of plaintiff on November 22, 1980.

3. The alleged larceny of parking receipts was reported to and investigated by the Tacoma Park Police Department. The investigation ended in January 1981 "due to all investigative leads having been exhausted, and the victim's ... refusal to submit to a polygraph examination."

failed to remit $13,237.50 in parking receipts to GSA.

On June 12, 1981, plaintiff filed suit in the Court of Claims. The suit was later dismissed on January 19, 1982 without prejudice. On January 29, 1982, plaintiff again brought suit in this court alleging that the government had wrongfully withheld $47,-776 in payments due on the custodial contracts and $7,758 in payments due on the parking contracts. Plaintiff seeks $375,000 in damages and asks the court to hold that: (1) government breached the contracts and is liable to plaintiff for damages consisting of lost profits; (2) government is liable for the risk of loss of the parking receipts money allegedly stolen from Ms. Brown; and (3) reversal of the suspension imposed by the GSABCA.

Defendant asserts that plaintiff's complaint fails to state a claim upon which relief can be granted, that the court lacks jurisdiction and that plaintiff failed to exhaust its administrative remedies. In addition, the government counterclaimed seeking: (1) judgment against plaintiff under the False Claims Act for $374,664, which represents double the amount of the alleged overcharges paid by GSA to plaintiff, plus a $2,000 forfeiture penalty per false claim; (2) or in the alternative, $187,332 for common law fraud, overpayment, or breach of contract; and (3) in a separate counterclaim, defendant seeks $13,237.50, the amount of the parking fees plaintiff failed to remit to defendant on GSA contract No. GS–11C–00102 and No. GS–11C–00104 and (4) judgment against plaintiff for administrative and performance costs resulting from plaintiff's alleged breach of contract No. GS–11C–00302.

On September 14, 1982 government moved for summary judgment and oral argument was heard on September 15, 1983. During oral argument plaintiff was allowed to supplement its opposition to defendant's motion with a government administration office report issued March 12, 1980. GAO report B–133150, GAO, Logistics and Communications Division.

■ Jurisdiction is proper under 28 U.S.C. 1491 for plaintiff's contract claims and defendant's counterclaim but this court lacks jurisdiction over plaintiff's claims which seek reversal of the GSA suspension and unearned profits. We, therefore, dismiss the latter two claims. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Nolan Brothers, Inc. v. United States*, 186 Ct.Cl. 602, 405 F.2d 1250 (1969). *See also Computer Wholesale Corp. v. United States*, 214 Ct.Cl. 786 (1977).

## DISCUSSION

■ We turn now to Defendant's Motion for Summary Judgment. As always, summary judgment is appropriate only where there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *South Louisiana Grain Service, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). Upon careful examination of the pleadings, submitted papers and oral arguments, we conclude, after construing the facts in a light most favorable to plaintiff that there remain genuine issues of material fact which must be determined at trial. Accordingly, Defendant's Motion for Summary Judgment is denied in part as to plaintiff's claim that the government wrongfully withheld payment on the janitorial contracts. The motion is further denied in part as to defendant's counterclaim under the False Claim Act or, in the alternative, to recover overpayment. Defendant's Motion for Summary Judgment is granted in part dismissing plaintiff's claim that the government is liable for the risk of loss of the receipts under the parking contracts and granting defendant's claim for return of the stolen receipts. The following sets forth the basis of the ruling.

■ Defendant would have us grant summary judgment based upon Mr. Mastropoalo's deposition in which he admits that plaintiff did not provide the man-hours required under the contracts but billed GSA as though the hours were worked. However, plaintiff has alleged that GSA is estopped from enforcing the man-hour re-

quirement because of acts which reasonably led plaintiff to believe that the contracts had indeed been modified in that the man-hour provisions would not be enforced. Plaintiff has provided the court with General Accounting Office report B–133150, GAO, Logistics and Communications Division, issued March 12, 1980. The report contains a review conducted by GAO of GSA's contract cleaning service activities. Page 13 of the report states in part:

> ... Some field officers had documented labor hour deficiencies, but they did not take labor hour deductions unless an arbitrary shortage level occurred ...

> ... Personnel at two of the region's field offices stated they did not take minimum labor hour deductions whenever a contractor was a few hours short if the cleaning was satisfactory.

In addition to the report, plaintiff relies on Mr. Mastropoalo's deposition which states that responsible government officials assured him that no deduction for not meeting minimum man-hour standards would occur so long as the buildings were properly cleaned in spite of the provision to the contrary in the contracts. We hold that plaintiff has alleged sufficient facts to put in dispute a material issue of fact and, therefore, plaintiff must be given an opportunity to prove the alleged modification or "interpretation" given by the parties to the contract. *Central Engineering & Construction Co. v. United States*, 103 Ct.Cl. 440, 465, 59 F.Supp. 553, 565 (1945). Until this factual determination is made, it would be premature to rule on defendant's counterclaim under the False Claims Act or in the alternative on its claim alleging overpayment.[4] Accordingly, the motion for summary judgment is denied as to these claims.

We next turn to plaintiff's claims under the parking contracts. Plaintiff argues that the government bears the risk of loss for the missing parking receipts under the parking contracts. We hold this argument to be without merit and grant Defendant's Motion for Summary Judgment thereon.

■ The pertinent provision of the parking contracts states:

> At the close of business each day, Contractor will deposit all currency and coins in a bank. On the following day, Contractor will convert deposits into a cashier's or certified check or bank money order payable to the General Services Administration * * * Contractor will hand-carry all checks and money orders [to GSA] no later than three (3) p.m. on the next work day after receipt.

It is well settled that contractual language should be given its plain and ordinary meaning where possible. *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979); *see also ITT Arctic Services, Inc. v. United States*, 207 Ct.Cl. 743, 751–52, 524 F.2d 680, 683–84 (1975). In this case, the contract required plaintiff to deposit all currency and coins collected as parking receipts in a bank at the close of business each day.

■ The plaintiff's President, Ms. Peggy Brown, failed to follow the explicit contract procedures for handling the parking money. Instead of depositing all the money in the bank at the close of business, the undisputed facts show that she took the money home with her in a paper bag. Had Ms. Brown followed the contract procedures, the money would not be missing. Consequently, the plaintiff, pursuant to the contract, is deemed responsible for the loss of the parking receipts, regardless of whether or not they were stolen.

### CONCLUSION

Defendant's Motion for Summary Judgment is denied in part as to the monies withheld on the janitorial contracts and on the related counterclaims. Defendant's Motion for Summary Judgment is granted in part as to the issue of liability for the missing parking receipts.

IT IS SO ORDERED.

---

**4.** The court is of the opinion that the issue of plaintiff's liability under the False Claims Act must be developed at trial, therefore, it is not ripe for disposition on summary judgment.