**RELIANCE INSURANCE COMPANY and L.G. Lefler, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 180–89C.

United States Claims Court.

June 27, 1990.

See also 18 Cl.Ct. 359.

Anthony N. Palladino, Vienna, Va., for plaintiffs.

Sharon Y. Eubanks, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson and Director David M. Cohen, for defendant.

## ORDER

LYDON, Senior Judge.

This government contract case comes before the court on defendant's motion for partial summary judgment with regard to four of plaintiffs' six construction claims. Plaintiffs oppose the motion, alleging the existence of material factual disputes. Oral argument on the motion was held on February 16, 1990. For the following reasons, the court grants defendant's motion for partial summary judgment.

## FACTS

Plaintiffs are Reliance Insurance Company (Reliance), a surety, and its principal, L.G. Lefler, Inc. (Lefler), a construction contractor. Lefler and the Department of Veterans Affairs (VA) entered into a construction contract on September 30, 1982, for the construction of an addition to the VA hospital in Tucson, Arizona. The original contract price was $11,331,500, and the original completion date was May 26, 1985 (950 calendar days). Reliance, as surety, assumed the ultimate liability for completing the project when it issued performance and payment bonds pursuant to the contract, naming Lefler as principal. Plaintiffs' complaint identifies six claims which arose during the course of the project, totalling $1.306 million. Defendant's motion for partial summary judgment involves four of the six disputed claims. The four claims, totalling $1.126 million, seek the recovery of additional delay overhead costs, in excess of overhead costs already awarded to plaintiffs pursuant to the 10 percent limitation on recovery of such costs imposed by contract clause G–10, for construction delays arising from certain change orders. It should be noted that plaintiffs' claims are limited to recovery of overhead costs in excess of the 10 percent limit in clause G–10.

In its summary judgment motion, defendant argues that clause G–10 of the contract expressly limits the amount of over-

head that may be recovered as a result of a change order, citing *Santa Fe Engineers, Inc. v. United States*, 801 F.2d 379 (Fed. Cir.1986). Clause G–10(A)(4) provides, in pertinent part:

> Allowances not to exceed 10 percent each for overhead and profit for the party performing the work will be based upon the value of labor, material and use of construction equipment required to accomplish the change. As the value of the change increases, a declining scale will be used in negotiating the percentage of overhead and profit. Allowable percentage on changes will not exceed the following: 10% overhead and 10% profit on first $20,000; 7½% overhead and 7½% profit on next $30,000; 5% overhead and 5% profit on balance over $50,000. Profit shall be computed by multiplying the profit percentage by the sum of the direct costs and computed overhead costs.

Clause G–10(A)(9) defines "overhead" as follows:

> Overhead and Contractor's fee percentages shall be considered to include insurance other than mentioned herein, field and office supervisors and assistants, watchman, use of small tools, incidental job burdens, and general home office expenses, and no separate allowance will be made therefore [sic]. Assistants to office supervisors includes all clerical, stenographic and general office help. Incidental job burdens include, but are not necessarily limited to, review and coordination, estimating and expediting relative to contract changes are associated with field and office supervision and are considered to be included in the contractor's overhead and/or fee percentage.

The contract in dispute also contains a standard changes clause, which provides, in pertinent part:

> (a) The Contracting Officer may, at any time, without notice to the sureties, by written order designated or indicated to be a change order, make any change in the work within the general scope of the contract, including but not limited to changes:
>
> (1) In the specifications (including drawings and designs);
>
> (2) In the method of manner or performance of the work;
>
> (3) In the VA-furnished facilities, equipment, materials, services, or site;
>
> (4) Directing acceleration in the performance of the work.
>
> . . . .
>
> (d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this Contract, whether or not changed by any order, an equitable adjustment shall be made and the Contract modified in writing accordingly. . . .[1]

As the party opposing defendant's motion for partial summary judgment, plaintiffs are entitled to have their factual allegations taken as true. *See D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed.Cir.1983). The delays in the project were the result of defective drawings, specifications and other contract documents, which required the VA to issue frequent and substantial change orders. Such change orders not only caused delay requiring extension of the contract completion date by 498 days, but the change orders also caused increased costs as well. Lefler submitted approximately 150 requests for information to the VA during the course of the project, in an effort to clarify and correct the defective drawings, specifications and contract documents. The VA issued 192 field change orders and 38 central office change orders during the course of the contract. The change orders extended the completion date by 298 calendar days, to March 20, 1986, and the project was finally completed on October 6, 1986, 200 days beyond the 298–day adjustment. Plaintiffs seek an additional 181 calendar day extension to September 17, 1986.

---

1. The above-quoted changes clause reflects the fact that the standard changes clause was amended in 1967 to cover delay expenses resulting from change orders. *See Santa Fe Engineers, Inc. v. United States*, 801 F.2d 379, 381 & n. 2 (Fed.Cir.1986).

Reliance became involved in the project during the latter part of 1984, when Reliance became aware that Lefler needed financial help to complete the contract due to Lefler's acknowledged default. Thereafter, Reliance assumed responsibility for, and became actively involved in managing and completing the project. As a result, Reliance has spent approximately $1,660,000 to complete the project. The record does not indicate how much of this amount has already been paid to Reliance by change orders or otherwise, although plaintiffs' complaint seeks recovery of only $1.306 million. All six of plaintiffs' equitable adjustment claims were submitted to, and denied by, the contracting officer for the VA.

On February 26, 1987, plaintiffs submitted their first claim to the contracting officer, arising out of change order 2A, involving x-ray equipment. Plaintiffs claimed $100,718 for extended home office overhead and "extended general conditions,"[2] as well as $4,707 for critical path method (CPM) costs incurred in preparing the claim,[3] and a 15-day time extension. The claim was resubmitted on December 20, 1988 after proper certification, and the contracting officer denied the claim on February 17, 1989.

Plaintiffs also submitted a second claim to the contracting officer on February 26, 1987, arising out of change order 2G, involving installation of part of the ventilation system. Plaintiffs claimed $169,800 for extended home and field office overhead, as well as a time extension of 63 days. This claim was also resubmitted on December 20, 1988, and the contracting officer denied the claim on February 17, 1989.

On March 12, 1987, plaintiffs submitted their third claim to the contracting officer, seeking "costs" totalling $116,436 and a 45-day time extension, for construction delay arising from a construction rephasing modification.[4] Plaintiffs do not allege that this claim arose from a change order, which raises considerable doubt as to whether the G-10 clause applies to this claim. On June 18, 1987, the contracting officer granted the claim in part, awarding plaintiffs $31,197 and a 28-day time extension. Plaintiffs contend that the government did not apply the G-10 clause in figuring the delay costs for this award, but instead multiplied the 28-day time extension by $1,090 per calendar day of delay, a figure derived from a Defense Contract Audit Agency audit. The contracting officer denied the remainder of the claim on February 17, 1989. This claim is not the subject of defendant's motion for partial summary judgment.

On April 29, 1987, plaintiffs submitted their fourth claim to the contracting officer, arising out of change order 2J, involving preparation of x-ray rooms. Plaintiffs claimed $219,896 in extended home and field office overhead, as well as CPM costs, and an 86-day time extension. This claim was also resubmitted on December 20, 1988, and the contracting officer denied the claim on February 17, 1989.

On June 1, 1987, plaintiffs submitted their fifth claim to the contracting officer,

---

**2.** Although plaintiffs do not define the phrase "extended general conditions," defendant assumes in its brief that it means extended field office overhead. Since plaintiffs have raised no objection with regard to this interpretation, the court will consider "extended general conditions" to mean extended field office overhead.

**3.** Critical path method costs, which plaintiffs seek in their first and fourth claims, are presumably not recoverable as they may represent accounting costs associated with preparation for the litigation of claims against the government. *See Piggly Wiggly Corp. v. United States,* 112 Ct.Cl. 391, 430–31, 81 F.Supp. 819, 828–29 (1949). Moreover, as defendant points out, subsection 9 of the G-10 clause itself may bar

recovery of CPM costs, since it provides that a contractor's allowable percentage for overhead includes items such as "estimating and expediting relative to contract changes."

**4.** It should be noted that plaintiffs' third and sixth claims seek "costs" related to actions taken by the government with regard to the contract. These are the only two claims that ostensibly do not seek strictly overhead costs. However, the record is unclear with regard to plaintiffs' third claim, since plaintiffs' supporting affidavit from Lefler's project manager, John Feneck, states that plaintiffs sought extended general conditions and overhead costs from the VA relative to the third claim.

arising out of change orders U, V, W and X. Plaintiffs claimed $631,292 in extended home and field office overhead, and a 246–day time extension. This claim was also resubmitted on December 20, 1988, and the contracting officer denied the claim on February 17, 1989.

On October 30, 1987, plaintiffs submitted their sixth and final claim to the contracting officer, arising out of unilateral change order 2K, involving deletion of labor costs for the installation of x-ray equipment. Plaintiffs claimed "impact costs" of $304,941 in response to the VA's unilateral deductive change order in the amount of $308,036. As indicated *supra* note 3, like plaintiffs' third claim, the costs sought on this claim are not limited to overhead costs. On May 20, 1988, the contracting officer denied plaintiffs' claim, but decreased the credit taken by the VA from $308,036 to $97,613. Like plaintiffs' third claim, this claim is not the subject of defendant's pending motion for partial summary judgment.

Plaintiffs filed the present suit in this court on April 3, 1989, seeking equitable adjustments to the contract in the total amount of $1,306,572, and a 181 calendar day time extension. There is no indication in the materials before the court that plaintiffs were assessed liquidated damages relative to contract performance. During the administrative proceedings, the VA awarded plaintiffs, by application of the G–10 clause, $104,338 and a 298 calendar day time extension. Plaintiffs seek, in their first, second, fourth and fifth claims, to recover delay overhead costs in excess of the overhead costs the VA has already awarded them pursuant to the G–10 clause's limitation on the recovery of such costs.

## DISCUSSION

This case is before the court on defendant's motion for partial summary judgment regarding four of plaintiffs' six contract claims, which motion is opposed by plaintiffs. Therefore, the court must resolve all doubts regarding factual issues in favor of plaintiffs as the non-moving party. *See Litton Indus. Products, Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *Allstate Ins. Co. v. United States*, 20 Cl.Ct. 308 (1990). "However, a mere 'metaphysical doubt' will not prevent the granting of a summary judgment motion." *Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Defendant's position is that there are no genuine issues of material fact to prevent the court from granting defendant's motion for partial summary judgment. Defendant relies heavily on *Santa Fe Engineers, Inc. v. United States*, 801 F.2d 379 (Fed.Cir.1986), to support defendant's argument that clause G–10 of the contract applies to bar plaintiffs from recovering delay overhead costs in excess of the limits set forth in the G–10 clause.

In opposition to defendant's motion, plaintiffs contend that defendant is not entitled to summary judgment due to material factual disputes concerning plaintiffs' argument that the G–10 clause should not be applied to plaintiffs' delay overhead claims.[5] Plaintiffs advance four primary arguments in support of their position, as well as one alternative argument, all of which will be discussed below.

First, plaintiffs argue that *Santa Fe* is factually distinguishable from the present case, and its holding should be confined to the specific facts present in that case. Second, plaintiffs contend that the G–10 clause as applied to the present case directly conflicts with the amended changes clause and deprives the changes clause of its normal

---

**5.** In fact, however, the material factual disputes identified by plaintiffs are primarily related to the merits of their claims, *i.e.,* government wrongs which necessitated the change orders. *See* Plaintiffs' Statement of Genuine Issues. Interestingly, one of the genuine issues of fact cited by plaintiffs is the dispute "with respect to the meaning and interpretation of Clause G–10." As is well-known, the interpretation and meaning of contract clauses is a question of law, not of fact. *See Government Sys. Advisors v. United States*, 847 F.2d 811 (Fed.Cir.1988); *B.D. Click Co. v. United States*, 222 Ct.Cl. 290, 297, 614 F.2d 748, 752 (1980).

coverage with respect to the overhead costs associated with the delay claims. Third, plaintiffs assert that a material issue of fact exists with regard to whether the government breached its duty to deal fairly with plaintiffs, by unreasonably extending the contract through change orders, redesign and rephasing of the construction. Fourth, plaintiffs argue that another material issue of fact exists with regard to the government's inconsistent application of the G–10 clause during the course of the project, relative to plaintiffs' third claim involving the rephasing modification.

Finally, plaintiffs argue in the alternative that, if the court finds the G–10 clause applicable to plaintiffs' delay claims, then only the "party performing the work," such as subcontractors, should be barred from recovering delay overhead costs in excess of the G–10 limit, and all other parties injured by the delay should not be so limited.

An examination of the parties' positions relative to defendant's motion for partial summary judgment must begin with an analysis of the *Santa Fe* case, which the court finds controlling on the issue raised by the pending summary judgment motion, *i.e.*, the applicability of the G–10 clause. In *Santa Fe*, the contract in dispute was markedly similar to the one at issue here, involving the construction of an addition to a VA hospital, and the contract contained a G–10 clause identical to the one at issue here. In *Santa Fe*, during the course of performance of the contract, the VA issued a change order for different ceiling materials on part of the addition. The parties agreed to an equitable adjustment in the contract price for direct costs, and a time extension, but a dispute arose as to delay overhead costs. The VA argued that the limit in the G–10 clause covers all overhead claims, including overhead costs resulting from the 14–day delay authorized by the change order. The contractor's position was that the G–10 clause applies only to overhead related to direct costs, not to overhead related to delay. Specifically, the contractor pointed out that the changes clause is uniform and mandatory throughout the government, that the changes

clause was specifically amended in 1967 to cover delay expense arising from a change, and that the amended changes clause sets no limit on recovery of delay overhead costs actually and reasonably incurred. Therefore, the contractor reasoned that the G–10 clause should not be read to limit recovery of delay overhead, because the contractor would be deprived of reimbursement for such overhead. Moreover, the contractor argued, if the G–10 clause is read to limit delay overhead, it conflicts with the amended changes clause by depriving the contractor of a large part, if not all, of delay overhead costs, contrary to the broad coverage of the changes clause. Therefore, the contractor concluded that the changes clause should prevail over the G–10 clause. *Santa Fe, supra*, 801 F.2d at 381. Finally, the contractor argued that reading the G–10 clause to limit delay overhead costs would be unfair to a contractor which would be able to recover little, if any, delay overhead. *Id.* at 381.

Although the Federal Circuit in *Santa Fe* found the contractor's arguments not "unsubstantial or unreasonable," the court ultimately held that the contractor could not prevail, for the following reasons. First, the court noted that, on its face, the language of the G–10 clause covers delay overhead as well as direct costs overhead. Second, the court noted that the G–10 clause is a VA procurement regulation, 41 C.F.R. § 8–7.650–21 (1982), which vitiated the contractor's *contra proferentum* argument. The court explained that agency regulations are not governed by the contract construction rule that ambiguous contract provisions are to be construed against the drafter. Rather, the court found that agency regulations are governed by deference to reasonable and consistent agency interpretation. *Santa Fe, supra*, 801 F.2d at 381. The court found that the VA had consistently interpreted clause G–10 as the VA Board of Contract Appeals did in the administrative proceedings below. *Id.* at 381.

With regard to the contractor's argument that the G–10 clause conflicts with the changes clause, the Federal Circuit not-

ed that the VA regulation states that the G–10 clause supplements the changes clause, which, the court concluded, means that the G–10 clause is part of the changes clause, not a separate or conflicting provision. *Santa Fe, supra,* 801 F.2d at 382. In reaching this conclusion, the Federal Circuit relied on a 1975 Court of Claims decision, *Jack Picoult Construction v. United States,* 207 Ct.Cl. 1052, 529 F.2d 532 (1975), to find that the G–10 clause is not a deviation from the changes clause, nor is there a conflict between the two clauses. *Santa Fe, supra,* 801 F.2d at 382.

The contractor's final argument in *Santa Fe* was that it is unfair to include delay overhead with direct costs overhead in the G–10 clause because direct costs are likely to reach or exceed the limit and leave no room for delay overhead. The Federal Circuit also rejected this argument, finding that such a result is not certain. The court cited a 1968 Court of Claims case, *Morrison–Knudsen Co. v. United States,* 184 Ct.Cl. 661, 397 F.2d 826 (1968), in setting forth the rule on construing uniform contract clauses that conflict with other contract provisions: "[T]he court 'will construe the agreement, to the extent it is fairly possible to do so, *so as not to eliminate the standard article or deprive it of most of its ordinary coverage.'*" *Santa Fe, supra,* 801 F.2d at 382, quoting *Morrison–Knudsen, supra,* 184 Ct.Cl. at 666, 397 F.2d at 829 (emphasis supplied by *Santa Fe*). In concluding that the G–10 clause was fully applicable, the Federal Circuit concluded that "[t]here is no solid showing in this case that the Changes article will be eliminated by G–10 or that it will be deprived 'of most of its ordinary coverage'— even with respect to delay overhead." *Santa Fe, supra,* 801 F.2d at 382–83.

Defendant's reliance on *Santa Fe* to support its position that the G–10 clause is applicable to plaintiffs' four delay claims is well-founded. As defendant points out, several of plaintiffs' arguments in support of its position that the G–10 clause is not applicable are disposed of by a careful reading of *Santa Fe.* Recognizing the force of the *Santa Fe* holding, plaintiffs argue that *Santa Fe* is factually distinguishable from the present case, and that the holding should be limited to its facts. Although it is true that *Santa Fe* dealt with only one change order involving one 14–day delay, unlike the present case involving over 200 change orders and 498 days of delay, the court does not feel that the *Santa Fe* holding should be ignored or limited as requested by plaintiff. Moreover, it has been held that the number of change orders is not controlling with regard to whether changes are within the scope of the contract, and the court feels this rule is applicable with regard to whether the changes are within the scope of the G–10 clause. *See Saddler v. United States,* 152 Ct.Cl. 557, 561–62, 287 F.2d 411, 413 (1961).

Plaintiffs' argument that the application of the G–10 clause conflicts with the changes clause, and effectively deprives the changes clause of its normal application with respect to delay overhead, was specifically considered and rejected by the *Santa Fe* court, when it found that the G–10 clause supplements, rather than conflicts with, the changes clause. *Santa Fe, supra,* 801 F.2d at 382. Furthermore, plaintiffs argue that application of the G–10 clause would deprive plaintiffs of the ability to recover 86 percent of their delay overhead, a situation which, plaintiffs contend, is factually distinguishable from *Santa Fe.*[6] As defendant points out, this argu-

---

6. The court finds it useful in considering this argument to draw an analogy from the termination for convenience clause, which bars contractors from recovering anticipatory profits when the government chooses to invoke its contractual right to terminate the contract. *See G.L. Christian & Assocs. v. United States,* 160 Ct.Cl. 1, 312 F.2d 418, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). In *G.L. Christian,* the Court of Claims held that, although the contract in dispute contained no

express termination for convenience clause, its presence would be read into a $32.8 million contract to bar the contractor from recovering anticipatory profits, comprising the bulk of the contractor's claims which exceeded $5 million. *G.L. Christian, supra,* 160 Ct.Cl. at 15, 312 F.2d at 425. The court explained that the termination for convenience clause converts an otherwise actionable breach of contract into a contractual right to be exercised at the govern-

ment can also be disposed of by resort to the analysis in *Santa Fe*, where the court found that this result is by no means certain in all cases. *Santa Fe, supra,* 801 F.2d at 382. In addition, plaintiffs do not deny that they were fully aware of the presence of the G–10 clause in the contract upon acceptance of the contract award.

Plaintiffs' reliance on *Morrison–Knudsen, supra,* to argue that the changes clause should override the G–10 clause is misplaced, since, in that case, the court found that the parties could agree to limit the effect of the changes clause before entering into the contract by means of a special provision, or even eliminate the changes clause altogether, but the government could not eliminate the effect of the changes clause altogether once it was in the contract. The court concluded, however, that a special provision that directly conflicted with the changes clause would not be given effect. *Morrison–Knudsen, supra,* 184 Ct.Cl. at 666, 397 F.2d at 829.

■ Plaintiffs' argument that a material issue of fact exists with regard to the government's alleged breach of its duty to deal fairly with plaintiffs is based mainly on plaintiffs' contention that defective plans, specifications and other contract documents caused the government to issue an excessive number of change orders leading to unreasonable delay, without reasonably compensating plaintiffs. The cases cited by plaintiffs recognize that delay caused by the government violates its duty of good faith not to hinder contractor performance. However, these cases do not involve contracts containing a G–10 clause specifically limiting recovery for delay overhead costs. Therefore, as defendant points out, plaintiffs' allegation that a material factual dis-

pute exists with regard to the government's alleged breach of duty is not material to a determination of whether the G–10 clause applies in this case. Since plaintiffs' material issues of fact relate to the merits of the claims, which are not at issue relative to the motion for partial summary judgment, such disputes are not sufficient to defeat an otherwise supported motion for summary judgment. A material fact is one that will make a difference in the result sought by the summary judgment motion. *See Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959).

■ Plaintiffs' final main argument is that the government has inconsistently applied the G–10 clause during the course of contract performance which amounts to a waiver of the application of G–10 clause in this case. Plaintiffs allege that such a waiver is inconsistent with *Santa Fe,* in which the court noted that consistency of the VA's interpretation of the G–10 clause is an important factor in interpreting agency regulations. *Santa Fe, supra,* 801 F.2d at 381.[7]

Plaintiffs maintain in their brief and supporting affidavit that the government compensated plaintiffs for delay overhead, without applying the G–10 clause, with regard to a rephasing modification on two phases of construction, which is the subject of plaintiffs' third claim, submitted to the VA on March 12, 1987. Pursuant to that claim, plaintiffs sought costs totalling $116,436 and a 45–day time extension. The contracting officer awarded plaintiffs $31,197 and a 28–day time extension. However, as defendant points out, the rephasing modification was not accomplished by

---

ment's option. In the present case, the mere fact that the contractor may not be able to recover 86 percent of his delay overhead by operation of the G–10 clause is not sufficient reason to read the clause out of the contract. The 10 percent figure for recovery of overhead costs has been upheld as reasonable. *See Saddler, supra,* 152 Ct.Cl. at 577–78, 287 F.2d at 416 (10% overhead claimed as result of change order is reasonable); *Fehlhaber Corp. v. United States,* 138 Ct.Cl. 571, 630, 151 F.Supp. 817, 828 (1957) (10% is fair and reasonable allowance

for general overhead expense); *Salem Eng'g & Constr. Corp. v. United States,* 2 Cl.Ct. 803, 809 (1983) (change order awarding 10% overhead is reasonable).

7. *Santa Fe* has been cited with approval and followed by the VA Board of Contract Appeals in *Clover Builders, Inc.,* VABCA No. 2033, 88–2 BCA ¶ 20,629 (CCH) (1988), and *Jen–Beck Assocs.,* VABCA No. 2107, 87–2 BCA (CCH) ¶ 19,831 (1987).

change order, a fact not disputed by plaintiffs, and therefore the G–10 is not applicable since it only supplements the changes clause. That is why plaintiffs' third claim is not a subject of defendant's partial motion for summary judgment.

Even if the G–10 clause were applicable, plaintiffs fail to support their allegation that the VA did not apply the G–10 clause in awarding plaintiffs costs for the rephasing modification, other than by affidavit of Lefler's project manager, John Feneck, who stated that the contracting officer awarded "delay costs ... based on a Defense Contract Audit Agency audit of $1,090 per calendar day of delay ... multiplied by the 28 calendar day time extension awarded by the Contracting Officer. The VA failed to apply the G–10 clause to this claim." There is no indication in the record what, if any, portion of the award covered delay overhead costs, and what portion covered direct costs overhead.

Even if a portion of the award was intended to cover delay overhead, there is no showing in the record that the government intentionally waived the application of the G–10 clause. As discussed above, the *Santa Fe* court noted that the G–10 clause is a VA regulation, which presumably cannot be waived, *see G.L. Christian, supra,* 160 Ct.Cl. at 15, 312 F.2d at 425, except by one with proper authority to bind the government. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). There is a "strong presumption that government officials acted properly and faithfully discharged their duties, and that the regulations and procedures involved were properly observed and carried out." *Gross v. United States,* 205 Ct.Cl. 605, 613, 505 F.2d 1271, 1276 (1974); *see also Cooper v. United States,* 203 Ct.Cl. 300, 304 (1973). Furthermore, it is a well-established rule of law that "[w]aivers of rights must be voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Krzeminski v. United States,* 13 Cl.Ct. 430, 438 (1987) (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). *See also Lincoln Nat'l Life Ins. Co. v.*

*United States,* 217 Ct.Cl. 515, 521, 582 F.2d 579, 582 (1978). No such showing has been made here by plaintiffs, by affidavit, inference or otherwise, and it is not unreasonable to conclude that, if the VA did indeed fail to apply the G–10 clause to the rephasing modification claim, any such failure is as likely attributable to error or inadvertence as to waiver. The facts seem to indicate that the most likely explanation for the VA's failure to apply the G–10 clause, if indeed there was such a failure, is that the VA believed the G–10 clause to be inapplicable to a contract modification accomplished without a change order. In any event, plaintiffs have failed to establish a material factual dispute with regard to a possible waiver of the VA's application of the G–10 clause in this case. Therefore, "[w]here the record taken as a whole would not lead a rational trier of fact to find for a nonmoving party, there is no genuine issue for trial." *Cloutier, supra,* 19 Cl.Ct. at 328 (citing *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356). Plaintiffs' waiver argument, moreover, rests more significantly on the conclusory assumptions of counsel than it does on anything else. Such conclusory assumptions are insufficient to defeat a motion for summary judgment. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626–27 (Fed.Cir. 1984). Moreover, plaintiffs' general allegation of waiver contained in counsel's briefs, without support in the record, is not enough to defeat an otherwise supported motion for summary judgment. *See Arthur Venneri Co. v. United States,* 180 Ct.Cl. 920, 927, 381 F.2d 748, 752 (1967); *Garcia v. United States,* 123 Ct.Cl. 722, 737, 108 F.Supp. 608, 615 (1952).

■ Finally, plaintiffs advance an alternative argument in the event the court finds that the G–10 clause is applicable to plaintiffs' delay claims. Since the court has found that the G–10 clause applies, the court will consider plaintiffs' alternative argument. Plaintiffs point out that the literal language of the G–10 clause states that the overhead limitation applies only to "the party performing the work" under a change order. This language, plaintiffs

contend, indicates that parties who are delayed by the change, but who did not actually perform the work, should not be subject to the overhead limitation in the G–10 clause.[8] In support of their position, plaintiffs present a detailed breakdown of the work performed by plaintiffs and by two subcontractors on each change order involved in the four delay overhead claims. The only precedent plaintiffs cite to support such an interpretation of the G–10 clause is a Claims Court case, *Miracle Contractors, Inc. v. United States*, 5 Cl.Ct. 466, 470 (1984), which states the general proposition that contract language should be given its plain and ordinary meaning whenever possible, and a VA Contract Appeals Board decision, *W. Harley Miller, Inc.*, VABCA No. 1386, 79–2 BCA ¶ 13,941 (1979), upon which plaintiffs rely for the statement that "party performing the work" means the subcontractors who performed the work under the change orders. This statement has been taken out of context, however, since the Board in *W. Harley Miller* decided that a prime contractor was not entitled to receive a 10 percent profit on work performed by a subcontractor, pursuant to overhead limitation clauses similar to the G–10 provisions here.

In addition, a close reading of all the provisions of the G–10 clause, particularly subsection 5, indicates the fallacy of plaintiffs' argument. The provisions of the G–10 clause clearly indicate that the 10 percent limit on overhead costs applies to all tiers of contractors, including subcontractors. This was the essence of the holding by the VA Board of Contract Appeals in the *W. Harley Miller* case discussed above. Moreover, as defendant points out, the subcontractors on this project are not in privity of contract with the government. Therefore, the "party performing the work" can only mean plaintiffs, since they

are the contracting party to whom the G–10 clause applies. *See Bogart v. United States*, 209 Ct.Cl. 208, 213–14, 531 F.2d 988, 991 (1976); *Korea Dev. Corp. v. United States*, 9 Cl.Ct. 167, 172 (1985).

For the foregoing reasons, the court finds that the G–10 clause, which supplements the changes clause, applies to foreclose recovery of delay overhead costs in excess of clause G–10's limitation, with regard to plaintiffs' four delay overhead claims that are the subject of the pending motion for partial summary judgment. There is no indication in the record that plaintiffs inquired into the scope of the G–10 clause prior to bidding on, or accepting award of the contract. *See Santa Fe, supra*, 801 F.2d at 382 n. 6. Plaintiffs are not entitled to recover on their first, second, fourth and fifth delay overhead claims, and these claims are to be dismissed.

Defendant's motion for partial summary judgment with regard to plaintiffs' first, second, fourth and fifth claims is hereby GRANTED. The clerk is directed to enter judgment dismissing these claims, pursuant to RUSCC 54(b) since there is no just reason for delay. The parties are directed to advise the court, within thirty (30) days, or by July 27, 1990, as to how they intend to dispose of the remaining two claims in this case. If the remaining claims are to be tried, the parties shall provide the court, by the above-mentioned deadline, with dates for completion of discovery, dates for the exchange of witness and document lists and any objections thereto, dates for the submission of pretrial proposed findings of fact and briefs, and proposed trial dates. It is so Ordered.

---

8. Plaintiffs' brief explains that under this rather convoluted alternate argument, "[p]laintiffs are entitled to their actual overhead costs under the amended changes clause for the delay incurred while the subcontractors were performing their portions of the Change Order.... In addition, Plaintiffs are entitled to overhead costs, as limited by Clause G–10 for the [percentage] of the Change Order ... actually performed by Plain-

tiffs. Moreover, [the subcontractors] are entitled to their actual claimed general conditions and home office overhead costs for those portions of the Change Order ... work performed by Plaintiffs." However, subsection 5 of the G–10 clause indicates that the recovery limits on overhead costs due to change orders applies to all tiers of contractors and subcontractors.