**UNITED STATES COURT OF APPEALS**   **Filed 12/27/96**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                                          Elisabeth A.
Shumaker
Clerk                                                                                                            Chief Deputy Clerk

December 27, 1996


TO:   All recipients of the captioned order and judgment

RE:   95-4159, <u>Savage Industries, Inc. v. American Pulverizer Co.</u>
      December 18, 1996


      Please be advised of the following correction to the captioned decision:

      Judge Godbold's concurrence/dissent has been amended.  The revised
concurrence/dissent is attached.  Please substitute it for the one attached to the
original order and judgment filed December 18, 1996.




                                          Very truly yours,

                                          Patrick Fisher, Clerk




                                          Susan Tidwell
                                          Deputy Clerk

SAVAGE INDUSTRIES, INC.,

    Plaintiff-Counter-Defendant-Appellee,

v.

AMERICAN PULVERIZER COMPANY,

    Defendant-Counter-Claimant-Appellant,

CHRIS GRIESEDIECK,

    Defendant-Counter-Claimant.

No. 95-4159
(D.C. No. 94-CV-6)
(D. Utah)

_____

## ORDER AND JUDGMENT[*]

_____

Raymond Etcheverry (William J. Stilling with him on the brief) of Parsons Behle & Latimer, Salt Lake City, Utah, for Plaintiff-Appellee.

Francis E. Pennington, III (Kenneth W. Yeates and Craig W. Dallon of Van Cott, Bagley, Cornwall & McCarthy with him on the briefs) of Dankenbring, Greiman, Osterhold & Hoffmann, P.C., St. Louis, Missouri, for Defendant-Appellant.

Before **BRORBY, GODBOLD**[**] and **McWILLIAMS**, Circuit Judges.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable John C. Godbold, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

_____

Savage Industries, Inc. ("Savage Industries") brought suit against American Pulverizer Company ("American Pulverizer") for negligent misrepresentation, breach of warranty, breach of contract and equitable estoppel. The district court granted summary judgment in Savage Industries' favor on the issue of American Pulverizer's liability for breach of contract, and a bench trial was held on the issue of damages. Following a two-day trial, the district court issued detailed Findings of Fact and Conclusions of Law, and entered a Judgment in favor of Savage Industries for $499,296.26. Thereafter, American Pulverizer filed a motion to amend findings and judgment, which the district court denied. American Pulverizer appeals from the district court's judgment and order denying its motion to amend findings and judgment.

## I. Factual Background

In June 1991, Charles T. Main, Inc. contracted with Savage Industries for Savage Industries to build a waste coal handling system at the Sunnyside Cogeneration Project in Sunnyside, Utah. The contract required Savage Industries to provide 200 tons per hour of coal sized less than 1/4 inch to fuel the Sunnyside Cogeneration Facility.

_____

Thereafter, American Pulverizer manufactured and sold to Savage Industries a "double roll crusher" to process waste coal as part of Savage Industries' obligation under its contract with Charles T. Main, Inc. However, the performance of the double roll crusher proved unsatisfactory when it produced a large amount of oversized material which could not be used as fuel for the Sunnyside Cogeneration Facility. In an attempt to solve the problem with the crusher, Savage Industries and American Pulverizer entered into an August 1993 agreement which contemplated installation of a newly designed system -- a "Closed Loop System."[1]

Not long after entering the August 1993 agreement, the parties realized the Closed Loop System would not provide sufficient output to enable Savage Industries to meet its obligation to Charles T. Main, Inc. Consequently, in October 1993, Savage Industries and American Pulverizer executed a contract which provided for the installation of the "Zeigler System" instead of the Closed Loop System.[2] The October 1993 contract required American Pulverizer to

---

[1] The Closed Loop System was intended to maximize the crusher's output of the specified size of coal by employing a "looped" configuration of conveyors that would feed (and re-feed if necessary) oversized coal to the crusher.

[2] The Zeigler System was intended to recirculate oversized material back through a refurbished double roll crusher.

"[r]efurbish the Double Roll Crusher to meet OEM standards and specifications on or before November 8, 1993." It also required American Pulverizer to furnish all equipment for the Zeigler System, including the conveyor which would recirculate oversized material back into the system for crushing.[3]

Three days after entering the October 1993 agreement, American Pulverizer notified Savage Industries it was not financially able to perform its obligations under the contract. Although American Pulverizer's sales engineer subsequently installed newly machined roll segments on the double roll crusher, American Pulverizer never refurbished the double roll crusher as the contract required.

In order to satisfy its contractual obligation to Charles T. Main, Inc., Savage Industries searched for an economical crusher to replace the double roll crusher in the Zeigler system. Ultimately, Savage Industries purchased a Canica vertical impact crusher which met the output requirements for the Sunnyside Facility, and did so at the lowest cost possible by requiring fewer new conveyors and screens than the Zeigler System.[4]

---

[3] The October 1993 contract refers to the recirculating conveyor as the Fourth Conveyor (referred to hereinafter as the "CV-111 conveyor").

[4] Whereas the Zeigler system called for five new conveyors and two new screens, the Canica crusher required only two new conveyers and one new screen.

From February 1994 until May 1994, while modifications were being made to accommodate the new Canica crusher, Savage Industries rented a different, temporary crusher from Canica to meet the fuel requirements at the Sunnyside Facility. Savage Industries installed the permanent Canica crusher in May 1994.

Although the Zeigler System contemplated a closed loop system, whereby oversized product would be recirculated back through the system, Savage Industries initially elected, due to cost concerns, not to install a CV-111 conveyor to "close the loop" on the Canica system. Instead, oversized material was removed by conveyor to a stockpile area for reclamation by a front-end loader. In order to handle the growing stockpile of oversized material, Savage Industries employed additional workers, operated a second front-end loader, and operated its loaders two shifts instead of one. Savage Industries had not purchased a CV-111 conveyor as of the time of trial; however, Savage Industries received capital fund approval for the conveyor in June 1995.

## II. Issues Raised on Appeal

This case was tried before the district court, sitting without a jury, in June 1995. Following a two-day trial, the district court entered its Findings of Fact and Conclusions of Law, awarding Savage Industries damages in the amount of

$499,296.26.  Included in the district court's damages  award is the sum of $62,330.00 for the CV-111 conveyor which Savage Industries had not purchased as of the date of trial.[5]  Also included in the court's damages award is $116,484.93 for additional operating expenses incurred by Savage Industries between November 9, 1993, and the end of May 1994.  On appeal, American Pulverizer contests the damages awarded for the CV-111 conveyor and additional operating expense.

Specifically, American Pulverizer's appeal raises three issues:  (1) whether the district court erroneously applied Utah law in awarding $62,330.00 to Savage Industries for the CV-111 conveyer; (2) whether the $62,330.00 award for the CV-111 conveyor is supported by sufficient evidence; and (3) whether the $116,484.93 award for additional operating expenses is supported by sufficient evidence.  After thoroughly reviewing the parties' respective briefs, the entire

[5] The district court made no specific finding of fact on this particular item of damages.  However, in discussing the issue of pre-judgment interest in its Conclusions of Law, the district court stated "on one substantial item of damage Savage has been allowed for the CV 111 Conveyor (*i.e.*, $62,330.00), prejudgment interest is obviously inappropriate."  This statement clearly implies the district court found Savage Industries entitled to $62,330.00 in damages for the CV-111 conveyor.  The record indicates the omission of this item from its Findings of Fact was merely a clerical error.  *See* "Findings of Fact and Conclusions of Law," at 16-17 (district court's findings of fact skips from paragraph 17 to paragraph 19).

record, and all relevant law, we conclude American Pulverizer's appeal is without merit and should be denied.

## III. Analysis

### A. The CV-111 Conveyor

American Pulverizer contends the district court's award of $62,330.00 for the CV-111 conveyor is based upon a misapplication of Utah law and is not supported by the evidence.[6] Ordinarily, we apply a clearly erroneous standard in reviewing a trial court's determination of the amount of damages resulting from a breach of contract. *See Paramount Pictures Corp. v. Thompson Theaters, Inc.*, 621 F.2d 1088, 1091 (10th Cir. 1980).

> "We are not constrained by the clearly erroneous standard, however, when the trial court's computation of damages is predicated on a misconception of the governing rule of law. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 501 (1984) [further citations omitted]." Thus, in reviewing challenges to a trial court's determination of damages in a breach of contract case, we must distinguish between the challenge to the

---

[6] We note Savage Industries asserts American Pulverizer's appeal should be dismissed because American Pulverizer failed to raise its arguments before the district court. We assume, without deciding, American Pulverizer properly presented its arguments to the district court.

computation of the amount from the challenge to the law applied in computing that amount.

*EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1450 (10th Cir. 1990) (quoting *Chaparral Resources, Inc. v. Monsanto Co.,* 849 F.2d 1286, 1289 (10th Cir. 1988)).  Here, taking careful note of this distinction, we review de novo American Pulverizer's challenge to the law applied by the district court in computing damages, while we review American Pulverizer's challenge to the sufficiency of the evidence under the clearly erroneous standard.

### 1.  Trial Court's Application of Utah Law

American Pulverizer first contends the trial court misapplied Utah law in awarding Savage Industries damages for the CV-111 conveyer.  Essentially, American Pulverizer argues the district court improperly allowed Savage Industries to recover both the cost of the Canica System under a "cover" theory and the cost of the CV-111 conveyor under a "benefit of the bargain" theory.  Such a recovery, argues American Pulverizer, is in direct contravention to Utah's enactment of the Uniform Commercial Code, which provides an aggrieved buyer may *either* elect to cover and recover the expenses it incurred in covering *or* it may recover damages for non-delivery based upon the benefit of the bargain.

Here, since Savage Industries chose to "cover," American Pulverizer contends it is only entitled to recover damages for the costs of acquiring and installing the replacement Canica System.

Savage Industries, on the other hand, argues it is not precluded from recovering damages for the CV-111 conveyor because Savage Industries only effected a "partial cover" when it purchased and installed the Canica System. Unlike the design of the Zeigler System, the Canica System did not have a closing loop conveyor. Thus, according to Savage Industries, the purchase of the Canica System was merely a "partial cover," and does not bar Savage Industries from recovering the economic value of the CV-111 conveyor.

Under Utah's enactment of the Uniform Commercial Code, where the seller of goods in a transaction fails to deliver or repudiates his obligation to do so, the buyer may effect cover and receive damages as measured by the difference between cover price and the contract price or recover the economic loss of a contract as measured by the difference between market price and the contract price. Utah Code Ann. §§ 70A-2-711-70A-2-713 (1990). In order to prevent double recovery, a buyer may recover the economic loss "only when and to the extent that the buyer has not covered." U.C.C. § 2-713 Official Comment 5. The

remedies set forth in Utah's Uniform Commercial Code "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." Utah Code Ann. § 70A-1-106.

American Pulverizer has cited no Utah case law in support of its argument that the trial court erroneously applied Utah law in awarding Savage Industries damages for the CV-111 conveyor. Our review of relevant authorities indicates no Utah court nor any other court located in the Tenth Circuit has spoken on the issue of whether a buyer may recover "benefit of the bargain" damages in situations where the buyer has partially covered. Thus, we must turn to outside jurisdictions for guidance.

In *Mann & Parker Lumber Co. v. Wel-Dri*, 579 F.2d 973, 975 (6th Cir. 1978), the defendant contracted to sell kilns and lumber handling equipment to the plaintiff. Thereafter, the defendant repudiated the contract and the plaintiff purchased substitute kilns from a third-party. *Id.* at 976. The district court denied the plaintiff damages for the defendant's failure to deliver and install the lumber handling equipment because the plaintiff had "still not acquired an inspection and grading system." *Id.* at 977. On appeal, the Sixth Circuit disagreed, stating "we know of no principle of contracts that requires an

aggrieved buyer to purchase substitute goods with respect to each and every part of the contract in the event of a total breach of contract, as a condition precedent to an award of damages for that breach." *Id.* at 979. Consequently, the Sixth Circuit remanded the case for the district court to determine the amount of damages resulting from the defendant's failure to deliver and install the equipment. *Id.* at 980.

Similarly, in *Interior Elevator Co. v. Limmeroth*, 594, 565 P.2d 1074, 1075 (Ore. 1977), the parties entered into a contract whereby the defendant agreed to sell the plaintiff 125,801 bushels of wheat. The plaintiff then entered a contract with a third-party to provide him with 125,000 bushels of wheat. 565 P.2d. at 1076. After delivering 120,663 bushels of wheat to the plaintiff, the defendant informed the plaintiff he would not be able to supply the remaining portion of wheat due under the contract. 565 P.2d at 1076-77. The plaintiff then covered the balance of its contract with the third-party, and filed suit against the defendant. 565 P.2d at 1076-77. The trial court did not allow the plaintiff to recover the value of the remaining 801 bushels since the plaintiff did not cover this amount. 565 P.2d at 1079. The Oregon Supreme Court, relying on Comment 5 to U.C.C. § 2-713, rejected the district court's determination, stating:

> the language emphasized in comment 5 ... makes it clear that the
> drafters of the code contemplated situations in which buyers would

only partially cover. This is precisely what occurred here. The plaintiff "covered" only enough to meet its contract obligation to Dreyfus. It would appear, therefore, that plaintiff would have been entitled to the actual cost of cover, if shown to be reasonable, plus damages measured under ORS 72.7130 as to the remaining 801 bushels.... The fact that plaintiff did not cover the entire amount does not bar recovery under ORS 72.7130.

565 P.2d at 1080.[7]

As the Oregon Supreme Court concluded in *Limmeroth*, we believe Comment 5 to § 2-713 of the Uniform Commercial Code indicates a buyer who has partially covered may also recover damages for economic loss pursuant to Utah Stat. Ann. § 70A-2-713 "to the extent he has not covered." Similar to the plaintiff in *Limmeroth*, Savage Industries was committed to perform under a contract with a third-party when American Pulverizer repudiated its contract with Savage Industries. In order to fulfill its obligations to the Sunnyside Facility, Savage Industries purchased and installed the Canica System. However, like the plaintiffs in *Mann* and *Limmeroth*, Savage Industries only effected a partial cover. The Canica crusher did not contain a closed loop configuration, which was part of the goods Savage Industries was entitled to under its contract with American

---

[7] Oregon Rev. Stat. § 72-7130 is virtually identical to Utah Stat. Ann. § 70A-2-713. Similarly Oregon's statutory provisions concerning cover are indistinguishable from Utah Stat. Ann. §§ 70A-2-711-70A-2-712. *See* Or. Rev. Stat. §§ 72.7110-72.7120 (1995).

Pulverizer.

As the plaintiff in *Mann* was permitted to recover damages for the lumber handling system and the plaintiff in *Limmeroth* was entitled to recover damages for the 81 bushels of wheat it did not cover, Savage Industries should be permitted to recover the economic value of the CV-111 conveyor. Such recovery is necessary to comply with Utah Code Ann. § 70A-106's purpose of putting the aggrieved party in as good a position as if the other party had fully performed. Moreover, if we were to overlook Comment 5's language and prohibit a party from recovering benefit of the bargain damages where it has only partially covered, we would create an additional hardship for an injured party who must cover to satisfy a third-party contract. In order to obtain full recovery, such a party would be forced to cover for the value of the entire contract regardless of its ability to pay for cover and regardless of the economic circumstances existing at the time of cover. We refuse to adopt such a strict interpretation of Utah Code Ann. §§ 70A-2-711-13, and we therefore conclude the trial court's determination that Savage Industries is entitled to the economic value of the CV-111 conveyor is proper and in accordance with Utah law.

## 2. Sufficiency of the evidence

American Pulverizer also contends the trial court's damages award for the CV-111 conveyor is not supported by sufficient evidence. According to American Pulverizer, the record reveals Savage Industries had not purchased the CV-111 conveyor as of the date of trial nor did it have any definite plans to purchase the equipment. American Pulverizer argues "Savage [Industries] should not be awarded damages on the basis of mere speculation that it will later obtain and install" the conveyor.

Notwithstanding American Pulverizer's contentions, we believe Savage Industries presented sufficient evidence to enable it to recover damages for the CV-111 conveyor. In *Mann*, the Sixth Circuit determined the plaintiff was entitled to damages for the lumber handling equipment even though the plaintiff had not purchased this equipment. 579 F.2d. at 980. The Court determined an aggrieved buyer need not "purchase substitute goods with respect to each and every part of the contract in the event of a total breach." *Id.* at 979.

Similarly in *Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 92 n.5 (7th Cir. 1985), the Seventh Circuit concluded under U.C.C. § 2-712, "damages based on cost of repair are recoverable regardless whether the repairs are actually undertaken." The court affirmed the award of damages for

estimated repair costs, explaining even "if the repairs are not made, the potential market value of the goods is reduced by an amount equivalent to the value which would have been added by repair." *Id.*

Similar to the Sixth Circuit's determination in *Mann* and the Seventh Circuit's determination in *Continental Sand*, Savage Industries' failure to purchase the CV-111 conveyor does not bar it from recovering damages for the economic value of the conveyor. Savage Industries presented evidence at trial showing the parties contracted for the installation of a closed loop Zeigler System which would recirculate oversized material back through a refurbished double roll crusher until the material was reduced to the specified size. Following American Pulverizer's breach, Savage Industries partially covered by purchasing a Canica crusher which did not contain a closed loop system. In order to place Savage Industries in as "good a position as if the other party had fully performed," Savage Industries is entitled to the economic value of the CV-111 conveyor pursuant to Utah Code Ann. § 70A-2-713. We thus affirm the trial court's award of $62,330.00 damages for the CV-111 conveyor.

## B. Additional Operating Costs

The district court awarded Savage Industries $116,484.93 in damages for additional operating costs incurred as a result of American Pulverizer's failure to refurbish the double roll crusher by November 8, 1993. American Pulverizer contends the district court's award of additional operating costs was clearly erroneous because Savage Industries did not establish these costs were proximately caused by American Pulverizer's breach of the October 1993 contract. We disagree.

"'Recovery of damages for a breach of contract is not allowed unless acceptable evidence demonstrates that the damages claimed resulted from and were caused by the breach.'" *Highland Constr. Co. v. Union Pac. R.R. Co.*, 683 P.2d 1042, 1047 (Utah 1984) (quoting *Boyajian v. United States*, 423 F.2d 1231, 1235 (Ct. Cl. 1970)). The costs must be tied to the fault of the defendant, *id.,* and a plaintiff may only recover those costs directly attributable to the defendant's breach. *Boyajian*, 423 F.2d at 1235 (citing *Saddler v. United States*, 287 F.2d 411 (Ct. Cl. 1961).

Here, the October 1993 contract called for the installation of a closed loop Zeigler System which would recirculate oversized material back through a

refurbished double roll crusher until the material was reduced to the specified size. One of the main reasons the parties contracted for the Zeigler System was to eliminate the expense of having to use a front-end loader to move oversized material back into the system for crushing. The October 1993 contract required American Pulverizer to "[r]efurbish the Double Roll Crusher to meet OEM standards [by] November 8, 1993." American Pulverizer explicitly represented in the contract the refurbished double roll crusher would produce 175 tons per hour of crushed product, with at least 85% of the finished crushed product being 1/4 inch or less.

The record in this case clearly reveals American Pulverizer breached its contract with Savage Industries by failing to refurbish the double roll crusher. At trial, in support of its claims for damages, Savage Industries presented testimony from Shawn Reddington, Savage Industries' Project Manager for the Sunnyside Cogeneration Project. According to Mr. Reddington, "a mountain of oversized material" continued to build-up following American Pulverizer's failure to refurbish the double roll crusher. Mr. Reddington testified Savage Industries was compelled to expend additional operating expenses in order to handle this growing stockpile of oversized material. Specifically, Savage Industries brought in additional workers, operated a second front-end loader, and operated its front-

end loaders for two shifts instead of one. Mr. Reddington opined that Savage Industries would not have incurred any additional operating expenses if American Pulverizer had fulfilled its contractual obligation to bring the double roll crusher up to O.E.M. standards by November 8, 1993.

From Mr. Reddington's testimony, we believe the trial court reasonably could have concluded American Pulverizer's breach of contract proximately caused Savage Industries to sustain additional operating costs. If American Pulverizer had performed as required under its contract, the Zeigler System would have been installed. The Zeigler System would have produced 175 tons per hour of crushed product, and recirculated oversized material back through the system, eliminating the time and expense of using a front-end loader to haul the oversized product back into the system. However, since the Zeigler System was not installed, "a mountain of oversized product" accrued, and, according to Mr. Reddington, Savage Industries was forced to incur extra costs for labor and equipment to deal with this product. Clearly, Savage Industries presented sufficient evidence from which the trial judge reasonably could have concluded Savage Industries' additional operating expenses were directly attributable to American Pulverizer's breach. We therefore affirm the district court's order and judgment awarding damages to Savage Industries for additional operating

expenses.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's damages awards of $62,330.00 for the CV-111 conveyor and $116,484.93 for additional operating costs.

**Entered for the Court:**

**WADE BRORBY**
United States Circuit Judge

No. 95-4159, SAVAGE INDUSTRIES, INC., Plaintiff-Appellee, versus AMERICAN PULVERIZER COMPANY, Defendant-Appellant.

GODBOLD, Senior Circuit Judge, concurring in part and dissenting in part:

I concur except with respect to damages of $62,330 that appear to have been awarded for a conveyor that plaintiff was found to be entitled to but has not yet purchased. On this issue I would reverse or, at a minimum, vacate and remand.

As I understand the facts -- and they are not easy to understand -- there are several phases in the history of this case.

Phase 1: Defendant agreed to install a double-roll crusher. It was not satisfactory because it produced an excess of oversized material.

Phase 2: The parties agreed on a substitute "closed loop" system that would recirculate oversized crushed material back into the system to be crushed again. Soon thereafter the parties realized that the proposed closed loop system would not produce sufficient output of materials (Opinion of this court, Mss. p. 3).

Phase 3: The parties then agreed to install the "Zeigler system," and an agreement for this was executed. It was agreed that defendant would furnish equipment for the Zeigler system, including a conveyor that would recirculate oversized material back into the system for recrushing. To implement this agreement, plaintiff bought a Canica crusher, which plaintiff, in its proposed finding 9, agrees was a "cost effective alternative" to the original crusher. It has

been awarded damages for the cost of the Canica.

Phase 4:  As an incident of the Zeigler system plaintiff installed a recirculating system to recirculate product back through the crusher.  The requirement to recirculate oversized material was met.  Plaintiff's proposed finding 10 reads:

> 10.  In order to achieve the output contemplated by the parties for the Zeigler System, as set forth in paragraph 9 of the Contract, Savage installed a system for recirculating oversized produce back through the Canica crusher.  The system achieved the same result as the Zeigler System was intended to achieve, but did so with fewer conveyors and screens than were called for in the Zeigler System.

The Canica crusher was installed in May 1994.  For some five to six months before that time the recirculating system in place was producing an excess of oversized crushed material.  Plaintiff claimed that the excess required it to move materials by front-end loader, which increased its expenses.  Plaintiff was awarded $116,484.93 for this expense.  After May 1994 the Canica crusher was fully operative, and plaintiff has claimed no damages from costs of moving excess oversized material thereafter.

Several problems are presented by this court's decision.

It is not clear that plaintiff suffered any economic loss after May 1994.  The $62,330 is the cost of a new conveyor to move material through the recirculating system as installed.  Plaintiff says it will enable it to make the system into a closed loop system, and this court agrees that plaintiff is entitled to

the cost of a conveyor to achieve that design.  But it is not clear that plaintiff is entitled to the components of a closed loop design.  It is not clear from the evidence and the district court's findings whether the recirculating system, as installed, is the equivalent of a closed loop design.  It is not disputed that the recirculating system worked as to volume of output.  But, with respect to quality, the evidence is not clear to me, nor are the district court's findings.  Plaintiff claimed damages for a period to May 1984, when the Canica crusher was installed, because the system produced an excess of oversized material that had to be moved with front-end loaders.  It was awarded those damages.  The situation after May 1994 is cloudy.  For that period plaintiff claimed no damages arising from excess of oversized material.  Indeed plaintiff says that the Canica crusher "achieved the same result as contemplated."  Plaintiff was entitled to show that after May 1994 the recirculating system, as installed, including the Canica crusher, was not the equivalent of a closed loop design, in expected life, cost of repairs, or some other similar way.  No such deficiency has been proved.

The award of $62,330 is not supported by adequate district court findings. First, this court holds, in footnote 5, that the absent findings are implied and were omitted through clerical error, and it infers an intent by the district court to award the $62,330.  In another case this action by an appellate court might be appropriate.  In this case, in view of the considerations I have set out, this is not

appropriate. Second, the district court found that plaintiff "properly covered APCO's breach of the contract." (Finding 4.) This court, in a finding essential to its decision and without explanation, holds that plaintiff "only effected a partial cover" and is entitled to a balance of $62,330. Moreover, the fact situation is further clouded by the question whether plaintiff has any need for another conveyor. The Zeigler system called for five new conveyors. Savage installed instead the recirculating system that, it says, required only two new conveyors. It purchased and installed one new conveyor. In its proposed finding 11 H(1) plaintiff says: "In order to eliminate the need for four of the conveyors contemplated under contract, Savage relocated and refurbished a conveyor from the original crusher system." It is not clear why Savage, having met the need for four conveyors by relocating equipment and, having purchased one new one, has not met the requirement for five.

This case is different from Mann & Parker Lumber Co. v. Wel-Dri, 579 F.2d 973 (6th Cir. 1978), and Interior Elevator Co. v. Limmeroth, 565 P.2d 1074 (Or. 1977) (en banc). In Mann & Parker the seller contracted to supply dry kilns and lumber handling equipment but failed to do so. The purchaser sued. The district court misapplied a liquidated damage provision as it related to the kilns, and the court of appeals remanded for redetermination of those damages. 579 F.2d at 979. As to lumber handling equipment, the district court denied damages

-4-

because the purchaser had not purchased complete substitute systems. This was remanded, on the ground the purchaser was not required to purchase substitute goods for every part of the contract. Id. There was no issue of whether a different and substituted lumber handling system performed the same as the system contracted for, indeed there was no substitute system.

In Interior Elevator the seller agreed to supply 125,801 bushels of wheat but breached after delivering less than that. Purchaser covered to the extent of 125,000 bushels that it had contracted to sell to a third party. The district court denied recovery for the 801 bushels. The court of appeals reversed, holding that the fact that purchaser did not cover the entire amount did not bar recovery. 565 P.2d at 1080. The purchaser suffered an economic loss of the discrete item consisting of 801 bushels. There was, obviously, no issue of whether 25,000 bushels had the same economic value as 25,801 bushels.

I would reverse the award of $62,330 for a conveyor never purchased or, at a minimum, I would remand this issue to the district court to be addressed again and for entry of findings that would remove the uncertainties and differences in understanding that divide the members of this panel.