**ARTHUR VENNERI COMPANY**

v.

**The UNITED STATES.**

No. 212–65.

United States Court of Claims.

July 20, 1967.

Jerome Reiss, New York City, for plaintiff. Max E. Greenberg, New York City, attorney of record.

Thomas J. Lydon, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COWEN, Chief Judge.

In 1955, plaintiff entered into six contracts with the Corps of Engineers, United States Army, for the construction of a dental clinic, certain buildings, utilities, facilities and a hospital at the Plattsburg Air Force Base, Plattsburg, New York. During the performance of these contracts, the Government precipitated a strike causing a work stoppage on all construction at the Air Force Base from December 16, 1955 to January 23, 1956, a period of 38 days. When the contractors—T. C. Bateson Construction Company, Consolidated Constructors, Inc., Frederick Raff, Inc., Paul M. Sterling Company, Inc., and plaintiff—separately sought equitable adjustments for the work stoppage under the standard Suspension of Work clauses of their contracts, the contracting officer denied their claims. The denial of plaintiff's claim was dated January 30, 1956.

On February 17, 1956, by registered letters addressed to the "Chief of Engi-

neers, Corps of Engineers, United States Army, Office of the District Engineer, 111 East 16th Street, New York, New York," plaintiff timely appealed the decision of the contracting officer. Unlike the appeals of the other contractors, plaintiff's appeal unexplainably was not forwarded to or docketed with the Corps of Engineers Claims and Appeals Board or the Armed Services Board of Contract Appeals. On March 16, 1960, the Armed Services Board of Contract Appeals denied relief to the other contractors for any increased costs of performance resulting from the strike. T. C. Bateson Constr. Co., 60–1 B.C.A. ¶ 2552; Consolidated Constructors, Inc., 60–1 B.C.A. ¶ 2561.

Recognizing that plaintiff's claims would be decided no differently, the contracting officer and plaintiff entered into a stipulation, stating in pertinent part:[1]

WHEREAS, [plaintiff's] claims are based upon the same facts and circumstances giving rise to certain claims submitted by the Consolidated Constructors, Inc. [and others] all of which after full scale hearings before the Engineer Board of Contract Appeals and the Armed Services Board of Contract Appeals, were denied in toto, copies of the said decisions being attached hereto and made a part hereof; and

NOW, It Is Stipulated and Agreed by and between the Contractor and the Contracting Officer, that the decision of the Armed Services Board shall be considered a final administrative determination of the issues of law and fact raised by the contractor's appeals, as fully as if the Contractor's appeals had been consolidated with the [Consolidated et al cases] and heard and decided by the said Boards.

The Bateson and Consolidated cases were subsequently appealed to this court. In decisions dated June 7, 1963, we re-

---

1. The record does not show that the stipulation was filed with the Corps of Engineers Claims and Appeals Board or the

Armed Services Board of Contract Appeals.

versed the Boards and held that the Government's actions, which triggered the strike, entitled the contractors to an equitable adjustment under the Suspension of Work clause. T. C. Bateson Constr. Co. v. United States, 319 F.2d 135, 162 Ct.Cl. 145, (1963); Consolidated Constructors, Inc., 162 Ct.Cl. 188 (1963). On the basis of those decisions, plaintiff requested the contracting officer to award it an equitable adjustment for the same 38-day period. When the request was denied, plaintiff filed suit in this court.

In addition to a general denial that the basic facts involved in plaintiff's claim are the same as those presented in the *Consolidated* case, the defendant interposes two additional defenses. The principal one is that plaintiff has failed to exhaust its administrative remedies, because it failed to obtain a decision from the Corps of Engineers Claims and Appeals Board or the Armed Services Board of Contract Appeals as required under the Disputes clause. To plaintiff's rejoinder that its stipulation with the contracting officer satisfied any obligation of exhaustion, defendant asserts that the contracting officer was without statutory authority to allow the stipulation to serve in lieu of an appearance before a Board of Contract Appeals. Relying upon the rule that the doctrine of apparent authority does not apply to the Government and that the Government may not be bound by its agents acting beyond the limits of their statutory powers (Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 383–384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)), the defendant maintains that the stipulation is without legal effect.

Defendant's contentions require us to examine the Armed Services Procurement Regulations definition of a contracting officer's powers. " 'Contracting officer' means any officer or civilian employee of any military department * * * with the authority to enter into and administer contracts and make determinations and findings with respect thereto * * *." 32 C.F.R. § 1.201–3 (1961). In recognition of the important role the contracting officer plays in the operation of Government contracts, the courts have liberally interpreted this "authority to enter into and administer contracts." Cf., Warren Bros. Roads Co. v. United States, 355 F.2d 612, 615, 173 Ct.Cl. 714, 720 (1965); John Reiner & Co. v. United States, 325 F.2d 438, 442, 163 Ct.Cl. 381, 389 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964). "The [contracting] officer in a sense is a party to the contract, not only representing but speaking for the impersonality of the government." United States v. Mason & Hanger Co., 260 U.S. 323, 325, 43 S.Ct. 128, 67 L.Ed. 286 (1932).

■ Consequently, the statutory authority of the contracting officer has been construed to include the power to settle claims arising under the contract. E. g., United States v. Corliss Steam-Engine Co., 91 U.S. 321, 323, 23 L.Ed. 397 (1875); Goltra v. United States, 96 F.Supp. 618, 625, 119 Ct.Cl. 217, 254 (1951). He also has the power to modify the contract. Whitman v. United States, 110 F.Supp. 444, 450, 124 Ct.Cl. 464, 476 (1953); 37 Ops.Atty.Gen. 253, 255 (1933). "In general, an officer authorized to make a contract for the United States has the implied authority thereafter to modify the provisions of that contract particularly where it is clearly in the interest of the United States to do so." Branch Banking & Trust Co. v. United States, 98 F.Supp. 757, 766, 120 Ct.Cl. 72, 87, cert. denied, 342 U.S. 893, 72 S.Ct. 200, 96 L.Ed. 669 (1951). Thus, we have held that the contracting officer may change a contract term requiring delivery by a certain date by accepting deliveries made well beyond the specified time. Copco Steel & Eng'r Co. v. United States, 341 F.2d 590, 599, 169 Ct.Cl. 601, 616 (1965). And in a contract involving the leasing of prisoners of war to a private contractor at 50 cents an hour, the Fifth Circuit has rejected the argument that the contracting officer had no authority to reduce the contract price to 37.5 cents per hour. United

States v. Adams Packing Ass'n, 197 F. 2d 33, 34–35 (5th Cir.), cert. denied, 344 U.S. 865, 73 S.Ct. 106, 97 L.Ed. 670 (1952).

 Here, the contracting officer's actions were not as far-reaching as settling a claim or modifying the contract. The stipulation did not terminate a dispute before it could reach the scrutiny of an administrative or judicial tribunal, nor did it change what the parties had originally bargained for when the contract was signed. Rather, the agreement between the contracting officer and plaintiff delineated the actual dispute between the parties by stipulating the underlying facts spawning the controversy. Both plaintiff and the Government benefited from that agreement. Spared the prosecution of a perfunctory appeal to its obvious administrative conclusion (in view of the Board decisions in *Bateson* and *Consolidated*), the parties have saved the time and expense such proceedings would have entailed. Thus the stipulation served the very function of speed and economy the Disputes clause was designed to provide.[2] See United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 429, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966). Accordingly, the contracting officer did not transgress the limits of his authority when he entered into the agreement with plaintiff.[3]

██ Defendant, however, contends that the contracting officer's authority ceased when he issued his decision under the Disputes clause. It offers no authority in support of such a restrictive view. Customary practice in the operation of Government contracts is to the contrary. One commentator has stated that even after a contracting officer has issued his decision on a dispute, he often takes part in the ultimate disposition of the claim, settling it after an appeal

from his decision has been filed by the contractor or even after a hearing has been held before a Board of Contract Appeals. Shedd, Jr., Disputes and Appeals: The Armed Services Board of Contract Appeals, 29 Law & Contemp. Prob. 39, 65 (1964). Absent a statutory proscription, then, the contracting officer's authority to administer the contract does not end when he renders his decision. We hold, therefore, that the contracting officer was acting within his authority when he entered into the stipulation with plaintiff and that plaintiff's timely appeal, the stipulation, and the final Board decision on the appeal of Consolidated Constructors, Inc., discharged plaintiff's obligation to exhaust its administrative remedies.

██ Nager Elec. Co. v. United States, 368 F.2d 847 177 Ct.Cl. ——, (1966) and Crown Coat Front Co. v. United States, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (Apr. 10, 1967) dispose of defendant's alternative defense that plaintiff's claims for five of its six contracts were barred by the statute of limitations (28 U.S.C., § 2501 (1964 ed.)), because the contracts were completed and accepted more than 6 years before suit was instituted in this Court. *Nager* and *Crown Coat* establish that a contractor's cause of action does not accrue until he has exhausted his administrative remedies. Nager Elec. Co. v. United States, supra, 386 F.2d at 854, 177 Ct.Cl. at ——; Crown Coat Front Co. v. United States, supra, at 4318. We have already concluded that plaintiff exhausted its administrative remedies by reason of its timely appeal from the contracting officer's decision, the final board decision of March 16, 1960, in the appeal of Consolidated Constructors, Inc., and the stipulation of November 13, 1961. Since plaintiff's petition was filed within 6 years from the date the Board's decision

---

2. This is not to say that plaintiff could have ignored the administrative process altogether. United States v. Blair, 321 U.S. 730, 734–735, 64 S.Ct. 820, 88 L. Ed. 1039 (1944).

3. Since the Disputes Clause is contractual rather than jurisdictional, the parties may agree upon an abbreviated administrative procedure. Cf. Moran Bros., Inc. v. United States, 346 F.2d 590, 593, 171 Ct.Cl. 245, 250 (1965).

was made and the date the stipulation was executed, plaintiff's suit is not time barred on any of the six contracts.

■ We turn now to the merits. The strike at the Plattsburg Air Force Base resulted from the Government's insistence upon using non-union labor in defiance of demands that only union labor be used. The Government undertook this course of action despite its knowledge that a strike would almost certainly result. Consequently, we held in the *Bateson* and *Consolidated* cases that the contractors were entitled to an equitable adjustment for any delay and additional expense stemming from the strike. We see no reason to depart from that conclusion in this case.

■ The stipulation notwithstanding, the defendant denies that the material facts essential to a determination of its liability are the same as those present in *Consolidated*. However, defendant has not only failed to submit any affidavits, documents, or depositions in refutation of the facts recited in the stipulation but acknowledges that there is a strong presumption that the construction work on plaintiff's contracts was affected by the strike in the same way as the work on the contract performed by Consolidated Constructors, Inc. The general denial is not sufficient to avert a summary judgment in plaintiff's favor. Rule 64, Rules of the Court of Claims (1964 ed.); Royal Indemnity Co. v. United States, 371 F.2d 462, 178 Ct.Cl. ——, (1967) and cases therein cited.

Plaintiff's cross motion for summary judgment is granted, in that it is entitled to an equitable adjustment for the same reasons and on the same basis as set forth in our decisions in the *Bateson* and *Consolidated* cases. Defendant's motion for summary judgment is denied. Further proceedings in this court are suspended, with a direction to plaintiff to make prompt application to the Armed Services Board of Contract Appeals for its determination of the amount of the equitable adjustment due plaintiff.